ROBERT F. CHAPMAN, JR. and PHYLLIS CHAPMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Chapman v. Commissioner
Docket No. 12443-79.
United States Tax Court
T.C. Memo 1982-68; 1982 Tax Ct. Memo LEXIS 675; 43 T.C.M. (CCH) 511; T.C.M. (RIA) 82068; February 11, 1982. Robert F. Chapman, Jr., pro se. Anne Hintermeister, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1977 in the amount of $ 760. The issues for decision are (1) whether petitioners should be relieved of the deficiency determined by respondent because respondent's agents did not exercise their discretion to terminate the examination of their return as repetitive, and (2) whether petitioners are entitled to deduct the cost of Mr. Chapman's driving his personally owned automobile from his *676 home to his place of employment. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner Robert F. Chapman, who resided in Spring Valley, New York at the time of the filing of the petition in this case, and petitioner Phyllis Chapman, who resided in Sloatsburg, New York at the time of the filing of the petition in this case, were husband and wife in 1977. They filed a joint Federal income tax return for the calendar year 1977. During 1977, Robert F. Chapman (petitioner) was employed by the New York City Police Department as a detective. He had been employed in this capacity since 1967. During 1977, petitioner was assigned to the 6th Homicide Zone with offices located at 120 East 119th Street in Manhattan. During the year 1977 petitioner resided in Sloatsburg, New York. Sloatsburg is in Rockland County, approximately 40 miles from petitioner's 1977 assigned work location. There is a bus that runs from Sloatsburg to the Port Authority Terminal *677 at 42nd Street and 8th Avenue in New York City. Although some buses on this line stop at the 178th Street North Terminal, to bus on the line stops at both Sloatsburg and the 178th Street North Terminal during the morning hours. There is a bus that leaves Sloatsburg at approximately 2 o'clock in the afternoon that stops at the 178th Street North Terminal. Petitioner's residence is approximately one-half mile from the bus stop in Sloatsburg. In 1977, if petitioner had come by bus from Sloatsburg to the Port Authority Terminal, it would have been necessary for him to take the crosstown shuttle from the Port Authority subway station to Grand Central Station and then take a northbound subway from Grand Central to reach his assigned post of duty. No bus leaves New York City for Sloatsburg between 12:30 a.m. and 6:45 a.m. During the year 1977 petitioner worked approximately 240 days. He would work the 8 a.m. to 4 p.m. shift for two days and then would work the 4 p.m. to 1 a.m. shift for the following two days. On his second 4 p.m. to 1 a.m. shift he would generally sleep at the police station since he would have to report the next morning at 8 a.m. and it was not worthwhile for him *678 to return home. Petitioner was not required to use his privately owned automobile in connection with his police work but was permitted to do so. There were between 55 and 60 detectives assigned to the 6th Homicide Zone in 1977. On any one shift there would be from 4 to 18 detectives working out of the 6th Homicide Zone, depending on the cases under investigation. There were 10 police cars assigned to the 6th Homicide Zone, but generally only 5 of those cars were available for use by the detectives assigned to that zone. For this reason, petitioner's superiors were pleased to have detectives bring their personally owned automobiles for use in their police work. However, petitioner's superiors never put any pressure on the detectives or even encouraged them to use their privately owned automobiles in their work. There was no problem in 1977 having automobiles available for use by detectives assigned to the 6th Homicide Zone since more than one-half of the detectives generally drove their personally owned automobiles to work and had them available to use in their police work. During 1977 petitioner drove to work from Sloatsburg, New York and back every work day when he did not *679 sleep at the police station and used his car while at work. In 1973 petitioner's Federal income tax return was audited and he received a refund of $ 255. In 1974, his return was audited and he received a refund of $ 109.70. In 1975, his return was audited and he paid a deficiency based on the results of that audit of $ 58. The adjustments made in the audit of petitioner's 1975 return did not include a disallowance of any automobile expenses. Petitioner's 1976 return was not audited. When petitioner received notice of the audit of his 1977 return he responded to the initial contact letter, stating that an examination of the same issue had been made for prior years and resulted in no change and therefore he requested that the examination be concluded. Petitioner made this request in accordance with section 4253.7 of the Internal Revenue Manual of which he had obtained a copy. [2]
*680 Respondent in his notice of deficiency disallowed $ 2,401 of the $ 3,151 deduction claimed by petitioner on his 1977 return as travel expense with the explanation that petitioner had not established that more than $ 750 of the claimed travel expense was an ordinary and necessary business expense or was expended for the purpose designated. At the trial the parties agreed that the disallowance related solely to the portion of the claimed travel expense which represented petitioner's cost of driving his automobile to and from his home to his assigned post of duty. OPINION It is petitioner's position that since he used his automobile in his work, it was a tool of his employment and, therefore, he should be entitled to deduct the cost of transporting that tool from his residence to his place of employment. It is respondent's position that the disallowed portion of the travel expense claimed by petitioner to be deductible is a commuting expense which is a personal and not a business expense. Prior to the decision in , there was some conflict in the courts with respect to the allowance of a part or all of the cost to a *681 taxpayer of driving to and from his residence to his place of employment if he transported tools of his employment. The Supreme Court in Fausner settled the issue with respect to cases where the facts showed that the taxpayer would have commuted by private automobile regardless of whether he had to transport tools of his employment. The Court stated in the Fausner case that Congress has determined that taxpayers must bear the expenses of commuting to and from work. The Court went on to say that commuting expenses are personal and section 262 [3] does not exclude the cost of commuting from personal expenses merely because a taxpayer must carry incidentals of his occupation with him. We conclude on the basis of the facts in this record that petitioner would have driven his automobile to and from work even if he had not used the autombile in connection with his employment. Petitioner did not testify that absent needing his automobile in his work he would not have driven and the record is clear that because of the inconvenience *682 of taking public transportation he would have. On at least one day out of every four there would have been no available public transportation for petitioner to take from his post of duty to the place where he chose to reside. Cf. . On the basis of the facts in this record we conclude that petitioner would have driven his automobile to and from work even if it had not been convenient for him to use his automobile in connection with his work. For this reason, it is unnecessary for us to decide whether petitioner's automobile could properly be considered a "tool" used in his business. [4]
There is no merit to petitioner's contention that we should conclude that there is no deficiency in this case because respondent's agents did not exercise their discretion to conclude the examination of his 1977 tax liability when he pointed out to them that he had been examined for several prior years. In the first place, the matter is totally discretionary with respondent. In the second place, *683 there is no showing in this record that the issue of the deductibility of expenses incurred by petitioner in commuting to and from his place of employment was actually considered in any prior years. All this record shows in that regard is that no disallowance of travel expenses was made in prior years and that petitioner had claimed a deduction in prior years for driving to and from his home to his post of duty. Petitioner testified that he believed the auditors, in going over his returns for prior years, checked his claimed travel expense deduction. However, there is nothing to show that these auditors knew the claimed deduction included commuting expenses. However, whether auditors in prior years knowingly failed to disallow petitioner's claimed deductions for commuting expenses is immaterial. Petitioner had shown no abuse of discretion on the part of respondent's agents in exercising their judgment not to conclude the examination for the present year when he requested that they do so. There are other reasons why petitioner's contention, that we should hold there is no deficiency here because respondent's agents had examined his returns for three prior years, is without merit. *684 However, we do not consider it necessary to discuss all the reasons for our conclusion in this regard. Decision will be entered for the respondent.
Footnotes
1. None of the other adjustments made in the notice of deficiency were placed in issue in the petition, and at the trial petitioners conceded the correctness of these adjustments.↩
2. Sec. 4253.7 of the Internal Revenue Manual provides in part as follows: 4253.7 Repetitive Examinations (2) If a taxpayer (individual non-business returns only--no Schedule C or F) responds to the initial contact letter stating that an examination of the same issue(s) in either of the two preceding years resulted in no-change or a small tax change (deficiency or overassment), the following action will be taken. (3) When the taxpayer furnishes prior year records, and the issues on the prior year initial contact letter are the same as in the current year, the examiner will secure a transcript of the taxpayer's accounts for the two preceding years. (a) If a no-change or small tax change is indicated for the year(s) corresponding to the copy of the initial contact letter and a substantive audit change is not shown for either year, the examiner may determine that the current year examination should be concluded. Group manager approval must be obtained and the workpapers will include adequate comment by the group manager. The examiner will close the case following the procedure in (6) below.↩
3. Unless otheriwse stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
4. See, however, ; .↩